## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

WILFREDO RIZ JUAREZ,                )
                                     )
          Petitioner,                )
v.                                   )          Case No. CIV-26-563-G
                                     )
WARDEN OF CIMARRON                   )
CORRECTIONAL FACILITY[1], et al.,    )
                                     )
          Respondents.               )

## REPORT AND RECOMMENDATION

Petitioner Wilfredo Riz Juarez, a noncitizen proceeding through his next friend and spouse Corban Nathaniel Brice, seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 10.[2] United States District Judge Charles B. Goodwin referred the case to the undersigned Magistrate Judge for initial proceedings

---

[1]      Respondent Warden of Cimarron Correctional Facility is a not federal official, and the response is not filed on the Warden's behalf. *See* Doc. 23, at 1 n.1.

[2]      This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). The Court construes "[a] pro se litigant's pleadings . . . liberally," holding them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court granted Mr. Brice, a non-attorney, permission to proceed on Petitioner's behalf as his next friend. Doc. 9, at 2.

under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 8.[3] The Government responded, Doc. 23, and Petitioner has replied. Doc. 24. So the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition and order Respondents to immediately release him subject to the same conditions of his earlier release or, in the alternative, order a prompt bond hearing under 8 U.S.C. § 1226(a).

## I.    Factual background and procedural history.

Petitioner is a citizen of Guatemala who entered the United States in August 2022. Doc. 10, at 7; Doc. 23, at 2. Petitioner asserts Immigration and Customs Enforcement (ICE) detained him on August 18, 2022, and released him on his own recognizance in Florida on August 31, 2022, after a custody review. Doc. 10, at 7; Doc. 25, Exs. 2-3. He reported as scheduled on October 7, 2022, and February 9, 2024. Doc. 25, Ex. 3, at 2. He was next scheduled to report on February 6, 2026, and ICE detained him on February 7, 2026. Doc. 10, at 2; Doc. 25, Ex. 3, at 2.

Respondents state Petitioner entered the United States in Arizona sometime in August 2022, and on December 12, 2022, the Department of

---

[3]     Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

Homeland Security (DHS) placed him in removal proceedings through the issuance of a Notice to Appear (NTA) which they mailed to Petitioner in Oklahoma. Doc. 23, at 2 & Ex. 2.[4] In the NTA, DHS declared he was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) of the Immigration and Nationality Act (INA) as an alien who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *Id*. Ex. 2.

Petitioner sought asylum on August 17, 2023. Doc. 10, at 8; Doc. 23, at 2 & Ex. 1 (I-589 Application for Asylum and Withholding of Removal). Petitioner states he is married to a U.S. citizen, and he has no failures to appear or any criminal history. Doc. 10, at 8. In a supplemental filing, Petitioner notified the Court that his spouse completed a Form I-130 Petition for Alien Relative that the U.S. Citizenship and Immigration Services approved on May 11, 2026. Doc. 26, Ex. 1.

## II.    Petitioner's claims.

Petitioner raises four grounds for relief:

Ground One: Unlawful statutory classification;

Ground Two: Violations of Fifth Amendment Due Process;

---

[4]    DHS apparently issued Petitioner an NTA on August 18, 2022, when it initially detained him. Doc. 23, Ex. 2, at 1. But the December 2022 NTA "supersede[d]" the initial NTA. *Id*.

Ground Three: Lack of "flight risk" or "danger to community"; and

Ground Four: Unconstitutional conditions (punitive detention).[5]

Doc. 10, at 7-8. Liberally construing the amended petition, Petitioner argues that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and his continued detention violates the INA and his due process rights. *Id.*

Petitioner asks this Court to immediately release him subject to "reasonable conditions of supervision," or order Respondents to provide a bond hearing within ten days where the Government bears the burden to "show by clear and convincing evidence" that the Petitioner poses a flight risk or a danger to the community. *Id.* at 8.

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

[5]    This claim is not cognizable in a habeas corpus proceeding. *See, e.g.*, *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (explaining that the "fundamental purpose of a § 2241 habeas proceeding" is to attack "the legality of [ ] custody," and "the traditional function of the writ is to secure release from illegal custody" (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973))).

4

§ 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.   Discussion.

### A.   Section 1226 governs Petitioner's detention.

Respondents assert "Petitioner is a noncitizen challenging his detention pursuant to 8 U.S.C. § 1225(b)(2)(A), rather than 8 U.S.C. § 1226(a)." Doc. 23, at 3. Petitioner, however, challenges the assertion that § 1225 applies to him, and the undersigned agrees. Doc. 10, at 7.

The undersigned recommends the Court reject, as it has before, Respondents' statutory interpretation of §§ 1226(a) and 1225(b)(2)(A). *See e.g.*, *Rawal v. Figueroa*, No. CIV-26-354-J, 2026 WL 1232291, at *1 (W.D. Okla. May 5, 2026) ("This Court, and indeed most courts in this circuit and nationwide, have repeatedly concluded that § 1226(a) controls in this situation." (citing *Coreas v. Noem*, No. CIV-26-151-J, 2026 WL 541151, at *2 (W.D. Okla. Feb. 26, 2026) (collecting cases))); *see e.g., Lopez v. Corecivic Cimarron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490 at *5 (W.D. Okla. Jan. 21, 2026) (collecting cases in this judicial district concluding that § 1225(b)(2) did not govern the petitioner's detention). And should adopt the reasoning of *Coreas*, where the Court previously addressed, in more detail,

5

these same issues. *See Coreas*, 2026 WL 541151, at \*2 ("[B]ecause Petitioner has been unlawfully living in the United States for many years without seeking admission, § 1225(b)(2)(A) does not apply, and § 1226(a), instead, controls Petitioner's detention."). In doing so, the Court joins the vast majority of district courts in this judicial district, in district courts within the Tenth Circuit[6] and across the country[7] to have addressed the same issues as those raised by Petitioner.[8] The Court's decision is also in accord with the Second Circuit, which has rejected the statutory interpretation of § 1225(b)(2) urged by Respondents. *See generally Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026); *see also Lopez-Campos v. Raycraft*, --- F.4th ---, 2026 WL 1283891, at \*11 (6th Cir. May 11, 2026); *Hernandez Alvarez v. Warden*, *Fed. Det. Ctr. Miami*, 2026 WL 1243395, at \*21 (11th Cir. May 6, 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, --- F.4th ---, 2026 WL 1223250, at \*21 (7th Cir. May 5, 2026); *but see Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir.  2026); *Avila*

---

[6]     *See, e.g., Aguilar Tanchez v. Noem,* 2026 WL 125184, at \*11-12 (D. Utah Jan. 16, 2026); *Hernandez v. Baltazar*, 2025 WL 2996643, at \*6 (D. Colo. Oct. 24, 2025).

[7]     *See, e.g., Lopez*, 2026 WL 165490, at \*7 (collecting cases concluding that § 1226(a) is the governing statutory framework).

[8]     *But see Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344 at \*3-5 (W.D. Okla. Jan. 6, 2026); *Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302 at \*5-12 (W.D. Okla. Dec. 26, 2025).

*v. Bondi*, 170 F.4th 1128, 1134-35 (8th Cir. 2026). The Court should conclude that § 1226(a) governs Petitioner's detention.[9]

### B.     Petitioner is entitled to relief under § 1226.

Petitioner's contention that Respondents violated the INA via an "unlawful statutory classification," is correct, and it resulted in his detention without a bond hearing. Doc. 10, at 7. He has appeared for every check-in and has no criminal history. *Id.* at 8.

When Petitioner was detained after residing in the country for over three years, he was not subject to mandatory detention under § 1225(b)(2)(A). Instead, Petitioner is subject to § 1226, and "is entitled to a prompt bond hearing before an immigration judge [(IJ)] pursuant to § 1226(a)." *Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *7 (W.D. Okla. Jan. 20, 2026);

---

[9]     Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez*, 2026 WL 1243395, at *21 ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.SC § 1225(b)(2)(A))).

*see also Cunha,* 175 F.4th at 70 (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending"). The undersigned agrees with Petitioner and determines he is detained pursuant to § 1226(a) and is at least entitled to a prompt bond hearing.

### C.    Petitioner is entitled to due process.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.,* 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)).

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez,* 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez,* 596 U.S.

8

573, 578 (2022) ("The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them."). The Government does not develop a fulsome argument in response to Petitioner's procedural due process Fifth Amendment claim and instead encourages the Court to rest its decision on the statutory interpretation question. *See* Doc. 23, at 11-12.

This Court analyzes Petitioner's due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See, e.g., Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment."

9

*Sanchez v. LaRose*, 2025 WL 2770629, at \*3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at \*3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at \*3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of his protected status when they detained him.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending three-plus years here. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in release grew even stronger as he worked, got married, and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he was apparently detained without notice or any changed circumstances.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026). Petitioner was summarily detained with no apparent procedural safeguards to determine whether the revocation of his order of release on his own recognizance was justified. This factor therefore weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a

11

valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the government has an interest in enforcing immigration laws," the government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the government's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("A[ noncitizen's] opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for three years.

### D.    Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) "The typical remedy for such detention is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

The undersigned finds that Petitioner's continuing due process violation requires his immediate release. *See* Doc. 25, Ex. 3; Doc. 10, at 7-8. This view is shared by numerous courts across the country, including courts in this Circuit. *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026) (concluding immediate release was the appropriate remedy where "there has been no notice

of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at \*13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at \*2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole). So the undersigned recommends the Court release Petitioner subject to the same conditions of his earlier release.[10]

## V.  Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court

- Grant Petitioner's habeas petition and order his immediate release subject to the same conditions of his earlier release or, in the alternative, order a bond hearing to be held within five days at which the Government bears the burden of

---

[10]  Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court find it is more appropriate for the Government to bear the burden of proof. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at \*5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having initially released Petitioner on his own recognizance in 2022, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

proving, by clear and convincing evidence, that Petitioner is a flight risk and a danger to the community;[11]

• Order the Government to certify compliance by filing a status report within ten business days of the Court's order, and to promptly provide a copy of this order to Counsel for the Warden of the Cimarron Correctional Facility; and

• Order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by June 8, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[12] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate

---

[11] The Court should deny Petitioner's pending motion for court-appointed interpreter as moot. Doc. 6.

[12] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

15

review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

      **ENTERED** this 3rd day of June, 2026.

                  SUZANNE MITCHELL
                  UNITED STATES MAGISTRATE JUDGE

16